UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>DONALD C. SUKIN,<br><br>    Defendant. | CASE NO. CR16-5304 BHS<br><br>REPORT AND RECOMMENDATION CONCERNING PLEA OF GUILTY AND PLEA AGREEMENT<br><br>NOTED: February 17, 2017 |

This case departs from the well-trodden path usually followed when a magistrate judge reviews a plea agreement, receives defendant's guilty plea, and recommends to the district court judge that both should be accepted. In this case, because defendant is pleading guilty to eight counts of mail fraud – with a potential outside limit of 160 years in prison – and the parties have failed to agree on a number of factors that could affect defendant's sentence, this Court is concerned that at this time defendant lacks a sufficient quantum of information to make a knowing, intelligent, voluntary decision to plead guilty. This problem is exacerbated by a provision in the plea agreement whereby defendant is giving up most of his rights to appeal the sentence ultimately imposed by the

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 1

Court.  While giving up rights to a future mistake always involves certain risks, those risks are compounded in complicated cases where, as here, the parties have so many areas of disagreement and areas of sentencing disparity.  In such cases, when the "quantum of information" is so low, and the risks for defendant are so high, defendant's guilty plea could be "inherently unknowing."

Fortunately, the Rules and presentence procedures provide a possible solution. For the reasons discussed more thoroughly herein, the Court is recommending that Judge Settle defer his decision on accepting the plea until after defendant receives the presentence report, any government objections, and any addendums, as set forth in Fed. R. Crim. P. 32(d) - (g). Then, if defendant chooses not to withdraw his guilty plea by a date certain, the Court can decide whether or not to accept the guilty plea.

This will allow the Court to be assured that defendant will have the benefit of significantly more information than he has at this stage of the proceeding, and will allow the Court to make the most informed decision regarding whether or not defendant entered this guilty plea knowingly, intelligently and voluntarily.

Background

Defendant, by consent (Dkt. 18), has appeared before the Court pursuant to Fed. R. Crim. P. 11, and has entered a plea of guilty to the Indictment.  The parties have also submitted a plea agreement for this Court's consideration (*see* Dkt. 20).

Defendant was charged with eight counts of mail fraud in connection with a scheme to receive deposits for franchises, based on false promises and representations

(Dkt. 1).  The proposed plea agreement contemplates that defendant will plead guilty to all eight counts.

The parties agree that, generally, fraud cases involve complicated guidelines calculations (Trans. 35). And, this plea agreement does little to simplify those calculations.   Among other things, the parties concede that:

1.      There is no agreement on the amount of the loss (Trans. 6). The government claims that the loss may be as high as $550,742.15 (Trans. 15).  However, defendant claims that the amount of loss is no greater than $450,000 (*id.*). Within the admitted facts, defendant is admitting to particular events that amount to approximately $85,000 (Trans. 19, 65-66). This is a significant difference and could amount to a two level increase in the calculation of the base offense level (Trans. 8, 15, 31; Sentencing Guidelines §2B1.1).

2.      Although the government has stated in open court that it has no intention of asking the Court to impose consecutive sentences for all eight counts, there is nothing in the plea agreement on this issue (Trans. 72-75). Defendant faces a maximum sentence of twenty years per count.  The Court, theoretically, could determine that the maximum sentence on one count is "inadequate to achieve the total punishment," and could impose a sentence of up to 160 years in prison (Trans. 58-59, 78-79, 81; Sentencing Guidelines, §5G1.2(c)).

3.      The parties have not agreed on *any* of the potentially applicable enhancements (Trans. 8, 31). The Sentencing Guidelines have 4 pages of potential enhancements for this offense. United State Sentencing Commission Guidelines Manual,

pages 89 – 93 (2016).   So, for instance, the government is not conceding at this point whether or not it will seek enhancements for any alleged abuse of trust (Trans. 18, 32, 67-69, Sentencing Guidelines §2B1.1(b)(9)), securities fraud, (Trans. 20, Sentencing Guidelines §2B1.1(b)(19)), whether or not it resulted in a financial hardship (Trans. 18 – 19, Sentencing Guidelines §2B1.1(b)(2)(C)), or whether or not it is a "sophisticated scheme" (Trans. 19, Sentencing Guidelines §2B1.1(b)(10)(C)). Furthermore, the parties have not agreed on the number of alleged victims (Trans. 18, 32, 64-65, Sentencing Guidelines §2B1.1(b)(2)).

4.     There are no agreements regarding potential downward adjustments, either, such as for possible mental health issues (Trans. 21).

5.     Finally, the government is not waiving its rights to assert other potential enhancements that may not have been disclosed as of the date of the agreement, although counsel at the hearing could not identify any additional enhancements that may be asserted (Trans. 44).

6.     There is no specific sentencing recommendation, other than the government agrees to recommend "no higher than the low-end of the advisory Guidelines range, calculated by the Court at the time of sentencing" (Dkt. 19, page 8, ¶ 11).

All of these undefined issues will have a significant impact on how the Sentencing Guidelines are calculated and defendant does not have information at this point as to how the government or Probation will evaluate these issues under the Sentencing Guidelines. And, of course, although Judge Settle will undoubtedly do his best to correctly calculate the Guidelines, sometimes even good judges make mistakes – that is why we have

appellate courts – and in the proposed plea agreement, defendant is giving up most of his rights to appeal any mistakes in these calculations.

Like almost all plea agreements reviewed by this Court, paragraph 14 of the plea agreement submitted for the Court's approval in this case provides that so long as "the court imposes a custodial sentence that is within or below the Sentencing Guidelines range . . . as determined by the court at the time of sentencing, Defendant waives" most of his rights to appeal the sentence imposed by the Court (Plea Agreement, Dkt. 19, ¶ 14, at page 10). This language is identical to the language considered by the Honorable Thomas S. Zilly in *United States v. Richard Thane Mutschler*, CR14-328 TSZ, where the court determined that the plea agreement's waiver of defendant's appellate rights was fundamentally unjust and "inherently unknowing" (CR14-00328, Dkt. 35, page 2). Like the plea agreement in *Mutschler*, the plea agreement here requires defendant to prospectively waive an error that has not yet occurred.  In *Mutschler*, defendant was pleading guilty to only one count of mail fraud, in exchange for the government's agreement to dismiss all other counts in the indictment (*id.* at page 3).  Like this case, the amount of loss was contested, and most of the possible enhancements were ill-defined and contested (*id.* at page 4). If anything, the potential consequences of defendant's plea in this case are even more dire than in the case before Judge Zilly because they involve eight counts, instead of one, and the potential of consecutive sentences.

Although defendant's experienced counsel described this standard appeal waiver in plea agreements as "anti-justice" and "coercive," he also admitted that the government regularly requires such a waiver and that the defendants he represents jump at the

opportunity of accepting the deal (Trans. 9 – 10). He states that if there is a truly

erroneous situation, the government will not enforce the appeal waiver and "allow"

defendant to appeal the sentence (Trans. 11, 76-77).  Whether or not defendant would be

"allowed" to appeal would be up to the government – not defendant (Trans. 77).  In

summary, he states that the government has his clients "over the barrel," and requests the

Court to accept the plea and plea agreement, because his client wants to take the deal

(Trans. 9).  Or, as Judge Zilly put it, " . . . the waiver has done its job of muting the party

with the most at stake and inhibiting the development of balanced jurisprudence."

*Mutschler*, at page 6.[1]

In *Mutschler*, Judge Zilly accepted defendant's plea and the plea agreement and

simply struck the waiver of appeal language from the plea agreement as "unjust" (Dkt.

35).  The defendant in *Mutschler* is currently appealing that sentence (Dkt. 54).

As this Court explained to the parties in this case, striking a clause from the plea

agreement is beyond the scope of my duties as a magistrate judge.  My job is to fulfill the

Court's obligations to "address personally the defendant in open court" and discuss with

him the areas identified in Fed. R. Crim. P. 11(b)(1).  Then, this Court is charged with the

responsibility of reporting to the sentencing judge regarding whether or not the guilty

plea is "voluntary," Fed. R. Crim. P. 11(b)(2), and reporting whether there is a factual

---

[1] It should be noted that the government offered defendant an alternative plea agreement that did not include a waiver of appellate rights, but also did not include any agreement by the government to request a sentence no greater than the low end of the guideline range. Defendant chose to accept the agreement with the appellate waiver, instead. This does not change this Court's analysis, however.

basis for the guilty plea. Fed. R. Crim. P. 11(b)(3).  Finally, this Court is authorized to make a recommendation regarding whether the sentencing judge should accept or reject the proposed plea agreement.  Fed. R. Crim. P. 11(c)(3).

This Court is satisfied that all of the requirements of Fed. R. Crim. P. 11(b)(1) have been met and that there is a factual basis to accept the plea under Fed. R. Crim. P. 11(b)(3).  Therefore, the remaining issues are whether defendant's plea is "voluntary" under Fed. R. Crim. P. 11(b)(2) and whether the plea agreement should be accepted under Fed. R. Crim. P. 11(c)(4).

<u>Accepting a Guilty Plea versus Accepting a Plea Agreement</u>

Accepting the guilty plea and accepting the plea agreement are distinct and different functions, and require a different evaluation process by the Court. *See, e.g., In re Ellis*, 356 F.3d 1198, 1206 (9th Cir. 2004).

According to the Supreme Court, this Court must not accept defendant's guilty plea unless the plea is a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("the plea is more than an admission of past conduct; it is . . . . a waiver of his right to trial before a jury or a judge, [and such] waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). The plea must be voluntary, knowing and intelligent, and it is the job of the Court to make sure of that, in part, to protect defendant. *See id.*; Fed. R. Crim. P. 11(b)(2).

1  In contrast, a plea agreement is a contract between the parties that may or may not

2  be endorsed and accepted by the Court.  The Court has "broad discretion" in accepting or

3  rejecting a plea agreement, *Morgan v. United States Dist. Court (In re Morgan)*, 506 F.3d

4  705, 708 (9th Cir. 2007) (citations omitted), and is less concerned with defendant's

5  interests and more concerned about assuring that the agreement is in the public interest

6  and serves justice. *Ibid.* at 711 (quoting *Ellis*, 356  F.3d at 1209) ("we concluded that

7  '[t]he district court here was free to, and in fact did, reject the proposed plea agreement

8  because it did not believe the guidelines sentence supported by the negotiated charge was

9  adequate to serve the public interest'"); *In re United States*, 503 F.3d 638, 642 (7th Cir.

10  2007) ("judges sometimes may reject plea agreements with which the parties are

11  satisfied, ordinarily [][][] to protect the Judicial Branch's interests, [f]or example  . . . .

12  if the agreed sentence would be one the judge deems inappropriate") (citing Fed. R.

13  Crim. P. 11(c)(1) and (5)).

14  

15  In ruling on whether or not to accept the guilty plea, absent defendant's written

16  consent, the Court may not consider certain facts contained in the presentence report. *See*

17  Fed. R. Crim. P. 32(e)(1).  "[T]he information in a presentence report, such as criminal

18  history and related conduct, is irrelevant to the determination of guilt or innocence, and is

19  only relevant to sentencing." *Vasquez-Ramirez v. United States Dist. Court (In re*

20  *Vasquez-Ramirez)*, 443 F.3d 692, 698 (9th Cir. 2006). Similarly, what particular

21  agreements the parties have reached in the plea agreement are not relevant to the Court's

22  determination of whether to accept or reject a guilty plea. *Id.* at 696 (footnote omitted).

23  Although the information in a plea agreement, or lack thereof, may provide evidence as

to whether or not the defendant's plea is voluntary, knowing, and intelligent, as noted by the Ninth Circuit, the "existence or non-existence of a Rule 11(c) plea agreement is irrelevant to the separate issue of how a defendant chooses to plead." *Id.*

In fact, the Supreme Court in *Hyde* overturned the Ninth Circuit's rationale that the district court should not accept the guilty plea without first accepting the plea agreement. *United States v. Hyde*, 520 U.S. 670, 674-75 (1997). The Court noted that "the Rules nowhere state that the guilty plea and the plea agreement must be treated identically" *Id.* at 677.

Theoretically, the Court can accept defendant's guilty plea and reject the plea agreement.  If the Court chooses to reject a Rule 11(c)(1)(A) plea agreement (like this one, as explained *infra*), the Court must give defendant an opportunity to withdraw the guilty plea. Fed. R. Crim. P. 11(c)(5)(B).   If defendant chooses not to withdraw from the plea, then the Court may proceed to sentencing as if there is no plea agreement – or what is sometimes referred to as a "naked plea, unencumbered by waivers of his right to appeal or collaterally challenge the proceedings." *In re Morgan, supra*, 506 F.3d at 713 (quoting *In re Vasquez-Ramirez, supra*, 443 F.3d at 697).

<u>Recommendation Regarding Accepting Defendant's Guilty Plea</u>

The Supreme Court noted the "importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea  .  .  .  ." *Brady*, 397 U.S. at 748 n.6 (citations omitted).

The Court recommends that Judge Settle defer accepting defendant's guilty plea until after completion of the presentence procedure.  If the Court delays acceptance of the

guilty plea until after defendant receives the presentence report, and any accompanying objections and addendums, defendant will have the opportunity to review that information prior to the Court accepting his guilty plea.  And, prior to the Court's acceptance of his plea, if defendant wishes to withdraw his plea, he may do so "for any reason or no reason." Fed. R. Crim. P. 11(d)(1).

This procedure has been followed by other courts and suggested by appellate courts facing similar problems, when the information available to the defendant on a complicated case was similarly limited.  *See, e.g., United States v. Mendez-Santana*, 645 F.3d 822, 825 (6th Cir. 2011) (the district court had deferred acceptance of a defendant's guilty plea "given the nature of the fact that there's no plea agreement and the unsettled issues concerning [an] enhancement  .  .  .  ."); *In re United States*, 503 F.3d at 641 (citation omitted) ("Sometimes it makes sense to postpone accepting a guilty plea  .  .  .  . when the potential sentence is so uncertain that a motion to withdraw the plea under Rule 11(d)(2)(B) is a significant prospect until the presentence report has been prepared"); *United States v. Shaker*, 279 F.3d 494, 497 (7th Cir. 2002) (per curiam) (explicitly noting that the district courts' deferring acceptance of guilty pleas until receipt of the presentence report was a practice that specifically was endorsed by the Seventh Circuit Court of Appeals) (citing *United States v. Ellison*, 835 F.2d 687, 689-90 & nn. 4-5 (7th Cir. 1987) (noting that problems can be avoided when a judge is unsure of the acceptability of a plea agreement by declining "to either accept or reject the plea of guilty at the time the plea is tendered," and deferring the decision on the plea until "review of the presentence report"); *United States v. Ewing*, 957 F.2d 115, 118 n.2 (4th Cir. 1992));

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 10

*cf. United States v. Joseph*, 2008 U.S. Dist. LEXIS 105089 at *20, 2008 WL 5423194 at

*7 (D. Hawaii. December 31, 2008) (unpublished opinion) ("motions to withdraw guilty

pleas are often triggered by reviews of sentencing guideline calculations in PSRs . . .

.").

      Although not binding precedent, the Court notes the following from the Seventh

Circuit that "[e]very defendant contemplating a step as momentous as pleading guilty is

entitled to enough information to make an intelligent decision," *In re United States*, 503

F.3d at 642 (citing *United States v. O'Neill*, 437 F.3d 654 (7th Cir. 2006)), and:

> Sometimes it makes sense to postpone accepting a guilty plea when the
> existing record does not permit the judge to make an intelligent decision
> under Rule 11(c)(5), or when the potential sentence is so uncertain that a
> motion to withdraw the plea under Rule 11(d)(2)(B) is a significant
> prospect until the presentence report has been prepared.

*In re United States*, 503 F.3d at 641 (citing *Shaker*, 279 F.3d at 497 (explicitly noting that

the district courts' deferring acceptance of guilty pleas until receipt of the presentence

report was a practice that specifically was endorsed by the Seventh Circuit Court of

Appeals) (citing *United States v. Ellison*, 835 F.2d 687, 689-90 & nn. 4-5 (7th Cir. 1987)

(noting that problems can be avoided when a judge is unsure of the acceptability of a plea

agreement by declining "to either accept or reject the plea of guilty at the time the plea is

tendered," and deferring the decision until "review of the presentence report"); *United*

*States v. Ewing*, 957 F.2d 115, 118 n.2 (4th Cir. 1992)); *see also United States v. Mendez-*

*Santana*, 645 F.3d 822, 825 (6th Cir. 2011) (the district court had deferred acceptance of

1  a defendant's guilty plea "given the nature of the fact that there's no plea agreement and

2  the unsettled issues concerning [an] enhancement  .  .  .  ."). [2]

3      After reviewing the presentence report, the government's objections to the report,

4  if any, and any addendums regarding both parties' objections, if any, defendant will have

5  the benefit of significantly more information upon which to evaluate more fully the

6  consequences of his guilty plea. Additionally, defendant will have had the opportunity to

7  withdraw his plea, without cause, if he is no longer willing to accept the risks associated

8  with this additional information.  Therefore, regardless of whether or not Judge Settle

9  reviews this presentence report prior to accepting the plea, Judge Settle will be in a much

10  better to position to determine that defendant has had a sufficient quantum of information

11  to make a knowing decision to plead guilty.

12      Based on the sentencing date of April 3, 2017, the probation officer needs to

13  provide the presentence report to defendant, defendant's attorney, and the government

14  attorney by February 27, 2017. *See* Fed. R. Crim. P. 32(e)(2) ("The probation officer

15  must give the presentence report to the [parties] at least 35 days before sentencing unless

16  the defendant waives the minimum period"). If the presentence report is provided on

17  February 27, 2017, the parties have until March 13, 2017 to object. *See* Fed. R. Crim. P.

18  32(f)(1) ("Within 14 days after receiving the presentence report, the parties must state in

20  _____

21  [2] It is important to note that if Judge Settle accepts this recommendation regarding presentence procedure, that he not review the presentence report prior to accepting or rejecting

22  the plea, unless defendant provides the Court written consent.  Fed. R. Crim. P. 32(e)(1) provides that absent defendant's consent in writing, "the probation officer must not submit a presentence

23  report to the court, . . .  until the defendant has pleaded guilty . . ."  In *Gallaher v. U.S. Dist. Court (In re Gallaher)*, 548 F.3d 713, 718 (9th Cir. 2008), the Ninth Circuit made clear that

24  "pleaded guilty" means that the Court has accepted the plea).  *Ibid.* (footnote omitted).

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 12

writing any objections  .   .   .  ."). If defendant wishes for the Court to review the presentence report prior to ruling on acceptance of his guilty plea, he must submit a signed, written consent to the Court. *See* Fed. R. Crim. P. 32(e)(1).  Defendant should submit any such written consent by March 20, 2017. On or after March 21, 2017, but before March 24, 2017, unless defendant has withdrawn his plea, the Court should rule on whether to accept or reject defendant's guilty plea.

Given that the Court already has concluded that in all other respects defendant's plea was given in accordance with Rule 11(b), and because the Court concludes that there is an independent basis in fact containing each of the essential elements of the offense, if defendant has not chosen to withdraw his guilty plea by March 20, 2017, the undersigned recommends that the Court accept defendant's plea at that time. *See* Fed. R. Crim. P. 11(d)(1). Probation shall submit a copy of its addendum to the presentence report, with its comments on the objections, to the parties (not the Court) before March 17. Given the timeline delineated herein, absent defendant's consent, "the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probations officer's comments on them" should be submitted to the Court on March 27, and *after* the Court rules on accepting the plea. Fed. R. Civ. P. 32(e)(1) and (g).

//

//

//

| Deadlines (All 2017) | Who | Actions |
|---|---|---|
| By February 27 | Probation officer | Submit presentence report to parties |
| By March 13 | Parties | File any objections |
| By March 17 | Probation officer | Submit a copy of addendum to the presentence report, with comments on the objections, to the parties (not to the Court) |
| By March 20 | Defendant | Withdraw plea, if desired |
| By March 20 | Defendant | Submit any written consent, if desired, for Court's viewing of presentence report before ruling on guilty plea |
| On or after March 21, but before March 24 | Judge Settle | Rule on whether to accept or reject defendant's guilty plea (unless withdrawn) |
| On March 27 | Probation officer | Unless defendant has previously provided written consent, submit presentence report and addendum to the Court |
| April 3 | Judge Settle | Rule on accepting plea agreement, and Sentencing |

<u>Recommendation Regarding Accepting the Plea Agreement</u>

Assuming defendant's guilty plea is accepted on or before March 24, 2017, then this Court recommends that Judge Settle defer accepting the plea agreement until the date of sentencing – on April 3, 2017.

According to Fed. R. Crim. P. 11(c)(3)(A), to the extent that "the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). The agreement in this case is a Rule 11(c)(1)(A) agreement.

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 14

1    In a Fed. R. Crim. P. 11(c)(1)(A) plea agreement, the government promises that it

2    will "not bring, or will move to dismiss, other charges." The plea agreement herein

3    provides that the "government agrees to move to dismiss any remaining counts at the

4    time of sentencing" (Dkt. 19, page 2, ¶ 1.a).  Further, the government "agrees not to

5    prosecute Defendant for any additional offenses known to it as of the time of this

6    Agreement that are based upon evidence in its possession at this time, and that arise out

7    of the conduct giving rise to this investigation" (Dkt. 19, page 9, ¶ 12). The agreement

8    further provides that "Defendant recognizes the United States has agreed not to prosecute

9    all of the criminal charges the evidence establishes were committed by Defendant solely

10   because of the promises made by Defendant in this Agreement" (*id.*).[3] Therefore, the plea

11   agreement submitted to the Court is of the type specified in Rule 11(c)(1)(A), which

12   allows the Court to defer a decision until the Court has reviewed the presentence report.

13   Fed. R. Crim. P. 11(c)(3)(A).

14

15       Again, recommending such a procedure in this case is consistent with the Rules

16   and the practice of other courts where a review of the presentence report is important to

17

18

19   _____

   [3] Although the government argues that these provisions are simply "boilerplate" and are in every
   agreement, defendant makes clear that this is a fundamental part of the plea agreement that he relied on when
   entering into the agreement (Trans. 2). At the subsequent status hearing, the government accepted the fact that the ¶
20   12 provision is part of the agreement. This is sometimes referred to as a "charge bargain." *Morgan v. United States
   Dist. Court (In re Morgan)*, 506 F.3d 705, 709-12 (9th Cir. 2007) (citation omitted). Although the government argues that the
   plea agreement indicates that it is "pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B)" (Dkt. 19, page 1),
21   that subsection refers to a "sentence bargain" in which the government agrees to "recommend, or agree[s] not to
   oppose the defendant's request, that a particular sentence or sentencing range is appropriate  .  .  .  ." Read very
   broadly, the plea agreement here contains a sentencing recommendation in that the government is agreeing to
22   recommend a sentence no greater than the low end of the sentencing guideline range, as "calculated by the Court at
   the time of sentencing" (Dkt. 19, ¶ 11), which, considering the number of variables in this case, is hardly a promise
23   at all, and is not "a *particular* sentence or sentencing range."  But, regardless, the parties agree, as does the Court,
   that a plea agreement can be a "charge bargain" under Rule 11(c)(1)(A) *and* a "sentence bargain" under Rule
24   11(c)(1)(B).  For purposes of analysis, the Court assumes that the agreement here is both.

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 15

1   the decision whether or not to accept a plea agreement.  The Court notes that the Federal

2   Sentencing Guidelines regarding the plea agreement procedure indicate as follows:

3         [Fed. R. Crim. P.] 11(c)(3)(A) gives the court discretion to accept or reject
          the plea agreement immediately or defer a decision pending consideration
4         of the presentence report. Given that a presentence report normally will be
          prepared, the Commission recommends that the court defer acceptance of
5         the plea agreement until the court has reviewed the presentence report.

6   18 U.S.C.S. Appx. § 6B1.1, Commentary.

7         Similarly, a comment to Rule 11 indicates that the "judge may, and often should,

8   defer his decision [regarding acceptance of the plea agreement] until he examines the

9   presentence report." Fed. R. Crim. P. 11, Advisory Committee Notes to the 1974

10  Amendments; *see also United States v. Hyde*, 520 U.S. 670, 674 (1997) ("guilty pleas can

11  be accepted while plea agreements are deferred, and the acceptance of the two can be

12  separated in time"); Fed. R. Crim. P. 11(c)(3)(A).

13

14        This method of accepting a guilty plea and then deferring the decision to accept or

15  reject a plea agreement is not uncommon. *See, e.g.*, *Hyde*, 520 U.S. at 678 ("the decision

16  whether to accept the plea agreement will often be deferred until the sentencing hearing")

17  (citations omitted); *United States v. Espino*, 2012 U.S. Dist. LEXIS 118510  at *1-*2,

18  2012 WL 12882771 at *1 (D. Ariz. August 21,  2012) (unpublished opinion) ("The court

19  may always defer a decision on accepting a plea agreement 'until the court has reviewed

20  the presentence report,'" and "deferring acceptance of the plea agreement under Rule

21  11(c)(3)(A) until the time of sentencing"); *see also United States v. Rankin*, 2015 U.S.

22  Dist. LEXIS 6136 at *2 (D. Mont. Jan. 20, 2015) (unpublished opinion) ("I adopt [the

23  Magistrate Judge's findings and recommendations] in full, including the recommendation

24

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 16

1   to defer acceptance of the Plea Agreement until sentencing when the Court will have

2   reviewed the Plea Agreement and Presentence Investigation Report"); *United States v.*

3   *Bishop*, 2014 U.S. Dist. LEXIS 173656, at *2 (D. Mont. Dec. 16, 2014) (unpublished

4   opinion) (same); *Joseph, supra*, 2008 U.S. Dist. LEXIS 105089 at *9, 2008 WL 5423194

5   at *4 ("This judge accepted the guilty pleas of all four Defendants, deferring until the

6   time of sentencing any decision on whether to accept the plea agreements"); *United*

7   *States v. Gibson*, Case No. CR04-0374RSM, 2004 U.S. Dist. LEXIS 20445 at *2, 2004

8   WL 2188280 at *1 (W.D. Wash. August 19, 2004) (unpublished opinion) ("This report is

9   forwarded with the recommendation that the court defer a decision regarding acceptance

10  of the plea agreement until the court has reviewed the presentence report pursuant to Fed.

11  R. Crim. P. 11(c)(1)(A)").

12

13       At sentencing, the Court will have more information and will better be able to

14  determine whether to accept or reject the plea agreement based on the specific

15  circumstances of this case.

16       This Court is not recommending that the appeal waiver in the plea agreement be

17  stricken.  The government argues that appeal waivers have been upheld by the Ninth

18  Circuit and the Supreme Court and that defendant's lack of certainty regarding a future

19  sentence cannot justify rejecting a guilty plea (Dkt. 24, pages 2-3, (citing *United States v.*

20  *Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) and *United States v. Ruiz*, 536 U.S.

21  622 (2002)).  "Certainty" is not what we are seeking.  "Knowledge" is.  As noted in

22  *Navarro-Botello*, a defendant can waive future sentencing mistakes in the plea agreement

23  even though he cannot know what issues may arise until after sentencing, but at some

24

point, a *guilty plea* is involuntary if defendant has "such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Id.* at 320 (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976)). The facts in *Navarro-Botello* make clear that the defendant in that case had far more clarity regarding his future sentencing when pleading guilty than is available to defendant here.  *Navarro-Botello* was a drug case, and the potential sentence was largely driven by the amount of drugs. The parties had agreed on downward deductions for acceptance of responsibility and for being a minor participant. *Id.* at 319. Finally, the parties had agreed to recommend a sentence of between 15-21 months, and the court imposed a sentence at the high end of the recommended range. *Id.* at 320.  Although defendant may have been uncertain of his exact future sentence, based on the information available to him, the sentence was hardly a surprise.

This Court is not seeking to upend the long line of cases upholding the validity of appellate waivers, but at some point, the uncertainty quotient resulting from disparate positions in a complicated sentencing is so high that it affects the ability of defendant to make a knowing and intelligent decision to plead guilty.  Through this proposed pre-sentencing procedure, the Court seeks to provide defendant additional information so that he can be better informed. Hopefully, this procedure would also obviate the perceived need for a sentencing judge to consider striking the appeals waiver because of defendant's lack of knowledge.  Frankly, unless the government is relying on defendant's uncertainty as a bargaining chip – and, to be clear, the government has denied that it is

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 18

1  doing so – the Court cannot fathom a single reason not to follow this procedure in this

2  case.

3      A district court enjoys "broad discretion" when choosing to accept or reject a plea

4  agreement, but must make the decision to accept or reject a plea agreement "in light of

5  the factual circumstances specific to the case." *Morgan v. United States Dist. Court (In re*

6  *Morgan)*, 506 F.3d 705, 710, 712 (9th Cir. 2007) (citation omitted). District "courts 'must

7  review individually every charge bargain placed before them.'" *Id.* at 710 (quoting

8  *United States v. Miller*, 722 F.2d 562, 566 (9th Cir. 1983)). Since the plea bargain here is

9  a "charge bargain," reviewing this plea bargain based on "the factual circumstances

10 specific to the case," can most easily be accomplished when more of the factual

11 circumstances involved are known to the Court. *See id.* at 710, 712.

12

13     For the reasons discussed herein, and assuming defendant does not provide written

14 consent for the Court to review the presentence report prior to accepting or rejecting his

15 guilty plea, the undersigned recommends that the Court defer its decision on whether to

16 accept or reject the plea agreement until after the final presentence report is delivered to

17 the Court, along with any addendum, and after the Court has accepted or rejected

18 defendant's guilty plea – which should occur before March 24, 2017.

19     This Court further recommends that Judge Settle defer a decision regarding

20 accepting the plea agreement until sentencing on April 3, 2017.

21     One final note – this Court is cognizant of the Rule prohibiting the Court from

22 participating in any way in the negotiations that lead to a plea agreement, Fed. R. Crim.

23 P. 11(c)(1), and I have not done so here.  In particular, as a result of this Court's

24

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 19

expressed concerns regarding the lack of agreement with respect to the application of the

sentencing guidelines, and in light of Judge Zilly's earlier ruling in *Mutschler* striking an

identical appellate waiver, this Court was advised by the parties that the government

insisted on a new term in the revised plea agreement:

> 17.  **Effect of Modification by the Court.**  The parties agree that if any provision of this agreement is modified or stricken by the Court without the express consent of both parties, the agreement shall be invalid and unenforceable, and the parties shall jointly move to withdraw from this agreement.

(Dkt. 19, page 11).

Therefore, in open court, at the status hearing, the government was asked if the

proposed procedure modified or changed the agreement of the parties in any way and the

government replied that it did not.  In addition, neither party has moved to withdraw from

this agreement.

<u>NOTICE</u>

Objections to this Report and Recommendation are waived unless filed and served

within fourteen (14) days.  28 U.S.C. § 636(b)(1)(B).

Dated this 30th day of January, 2017.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION
CONCERNING PLEA OF GUILTY AND PLEA
AGREEMENT - 20